IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| CAROLYN WRIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:25-cv-00918-BL-CWB |
| | ) | |
| PHENIX CITY BOARD OF EDUCATION, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Carolyn Wright was "a physical education teacher and Hall of Fame girls' high school head basketball coach for thirty-two (32) years at Central High School" in Phenix City, Alabama. (Doc. 1 at 1). Wright alleges that the Phenix City Board of Education ("Board") paid her much less than the male coach of the boys' high school basketball team. (Doc. 1 at 1–2). Wright also alleges that the Board removed her as coach "in retaliation for Ms. Wright's requests . . . for a raise of her coaching supplement pay commensurate with that of the boy's head basketball coach; and/or as discrimination against her based on her age or disability status." (Doc. 1 at 1).

On April 20, 2026, the Board filed a Motion to Dismiss the Complaint, arguing that Wright failed to exhaust administrative remedies, that her Title VII claims premised on alleged conduct occurring before July 25, 2023, are time-barred, and that she lacks standing to seek injunctive relief. (Doc. 19). Wright filed a

response to the Board's Motion to Dismiss (doc. 21), and the Board filed a reply to Wright's response (doc. 22). The Board's Motion to Dismiss is now ripe for review.

For the reasons set forth below, the court finds that the Board's Motion to Dismiss is due to be denied.

## FACTUAL ALLEGATIONS

The allegations in the Complaint, taken in the light most favorable to the Plaintiff, establish the following facts.[1]

Wright asserts that, in or around March 2021, the "Board introduced Charles Burkett as the new men's basketball head coach" at Central High School. (Doc. 1 at 10). The Complaint alleges that, in April 2021, the Board "had approved and would pay Mr. Burkett an annual 'negotiated' supplement of $35,018.00, as compared with the annual 'negotiated' supplement of $9,050.00 that the Defendant Board was paying [the] Plaintiff." (Doc. 1 at 10). Wright asserts that she "promptly started to call out to Defendant Board administrators the disparity and its facially apparent gender basis, and to request her own supplement be raised to remedy it." (Doc. 1 at 10–11).

In November 2021, Wright "lodged a formal complaint pursuant to the grievance procedure in the Phenix City Schools Board Policy Manual." (Doc. 1 at

[1] At the motion-to-dismiss stage, the court accepts the Complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the Plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

12). Wright alleges that, after a hearing on May 17, 2022, "the Board denied Plaintiff Wright's grievance based on discrimination due to gender." (Doc. 1 at 13). "On May 24, 2022, Plaintiff Wright and then-Superintendent [Randy] Wilkes agreed to a contract with an annual coaching supplement in the amount of $21,050.00, effective July 1, 2022." (Doc. 1 at 14). According to Wright, this agreement "left intact and unremedied at least (assuming no change in Burkett's supplement) a nearly $14,000.00 disparity between her and [Burkett's] coaching supplements for 2022-23." (Doc. 1 at 14). The Complaint alleges that "Wright experienced the disparity in the amount of her coaching supplement through July 2023." (Doc. 1 at 16).

The Complaint asserts that in "February of 2023, at the end of the girls' high school basketball team's season, Plaintiff Wright took medical leave." (Doc. 1 at 15). Wright "underwent a liver transplant on February 21, 2023, and remained on leave for recovery until around August 1, 2023, when Board teachers and other employees were to report for work." (Doc. 1 at 15). The Complaint alleges that when "Wright was about to return to work, in late July 2023, Defendant Board voted to terminate her as girls' high school basketball head coach, after 32 years in that position." (Doc. 1 at 15). Wright asserts that then-principal Kerry McDonald later informed her "that her contract as girls' basketball head coach would not be renewed" and that McDonald "gave no specific reason—only that the Board had met

and had decided to go in a different direction for girls' varsity at Central High School." (Doc. 1 at 15). The Complaint alleges that the "Board replaced Plaintiff Wright with a younger person, who had no head coaching experience; had far fewer years of coaching experience of any kind than Plaintiff; and had been an assistant coach to Plaintiff for the preceding 12 years." (Doc. 1 at 16). According to Wright, she returned "to her teaching position at Central High School at the beginning of August 2023" but, effective October 12, 2023, "resigned her teaching position to take a position as athletic director and head girls' basketball coach" at a high school in Montgomery, Alabama. (Doc. 1 at 16).

The Complaint asserts that Wright "has fulfilled all administrative prerequisites and conditions precedent to the institution of this action." (Doc. 1 at 3). Wright asserts that "[o]n or about January 21, 2024, Plaintiff timely filed a Charge of Discrimination" with the Equal Employment Opportunity Commission ("EEOC"). (Doc. 1 at 4). Wright alleges that "[o]n or about August 21, 2025, the EEOC issued and mailed to Plaintiff a Determination and Notice of Rights (including right to sue) regarding her EEOC charge" and that she filed her Complaint "within ninety (90) days of receipt of the notification from [the] EEOC of Plaintiff's right to sue on her EEOC charge." (Doc. 1 at 4).

## PROCEDURAL HISTORY

Wright filed this action on November 19, 2025. (Doc. 1). The Complaint asserts seven causes of action against the Board: (1) sex discrimination in pay under Title VII of the Civil Rights Act of 1964; (2) sex discrimination in pay under the Equal Pay Act; (3) retaliation under Title VII; (4) retaliation under the Equal Pay Act; (5) age discrimination under the Age Discrimination in Employment Act ("ADEA"); (6) disability discrimination under the Americans with Disabilities Act ("ADA"); and (7) disability discrimination under Section 504 of the Rehabilitation Act. (Doc. 1 at 16–27).

On April 20, 2026, the Board filed a Motion to Dismiss. (Doc. 19). Wright filed a response to the Board's Motion to Dismiss on May 15, 2026 (doc. 21), and the Board filed a reply to Wright's response on May 26, 2026 (doc. 22). In its reply, the Board argues that Wright's response to the Board's Motion to Dismiss is due to be stricken and should not be considered because Wright's response "was not timely filed in compliance with the Court's deadline of May 11, 2026." (Doc. 22 at 2). On June 16, 2026, Wright filed a motion to deem her response timely filed as of May 15, 2026. (Doc. 23). The court granted Wright's motion on June 16, 2026, but cautioned her that, in the future, she "would be better suited to file a motion to file out of time prior to or alongside any document filed out of time rather than filing the

same some 35 days after any court-imposed deadline." (Doc. 24). As such, the court considers Wright's response to the Board's Motion to Dismiss.

## LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires a short and plain statement of the claim showing that the pleader is entitled to relief." *Sanders v. Zalesky*, No. 1:25-CV-71-WKW, 2026 WL 579503, at *1 (M.D. Ala. Mar. 2, 2026) (internal quotations and citation omitted). When evaluating a Rule 12(b)(6) motion, the court must "accept [the facts alleged in the complaint] as true, and construe them in the light most favorable to" the plaintiff. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321-22 (11th Cir. 2012).

To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent

with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (internal quotation marks omitted).

The allegations in the complaint should present a "plain statement possess[ing] enough heft to show that the pleader is entitled to relief." *Twombly*, 550 U.S. at 557 (quotations omitted). "Mere 'labels and conclusions or a formulaic recitation of the elements of a cause of action will not do,' and a plaintiff cannot rely on 'naked assertions devoid of further factual enhancement.'" *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." *Iqbal*, 556 U.S. at 678–79. A plaintiff must "allege[] enough facts to nudge his claim … across the line from conceivable to plausible." *Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013) (citing *Twombly*, 550 U.S. at 570).[2]

[2] In its Motion to Dismiss, the Board states that "[a] motion to dismiss is due to be granted when the movant demonstrates 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" (Doc. 19 at 2) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). However, the Supreme Court has held that "after puzzling the profession . . ., this famous observation has earned its retirement." *Twombly*, 550 U.S. at 563. As such, the court applies the plausibility standard in deciding the Board's Motion to Dismiss rather than the observation set forth by the *Conley* Court.

## DISCUSSION

### I. The EEOC Charge and Right-to-Sue Notice

The Board first argues that Wright's claims "are time barred for failure to file an EEOC charge and exhaust administrative remedies" and that she "never received the notice of right to sue." (Doc. 19 at 4). The Board also faults Wright because her "right to sue letter was omitted" from the Complaint. (Doc. 19 at 5–6). Yet the Board's motion itself acknowledges that the "Plaintiff alleges that she filed a Charge of Discrimination with the EEOC on January 21, 2024, and a right to sue letter dated August 21, 2025, was issued to the Plaintiff." (Doc. 19 at 5). Wright responds that, not only did she "allege receipt of the notice of right to sue," but also, "as a factual matter, Ms. Wright . . . actually received a notice of right to sue from the EEOC regarding her charge in this case, issued by [the] EEOC on August 21, 2025," which Wright attached to her response as Exhibit 1. (Doc. 21 at 3–4).

As an initial matter, the court notes that these requirements do not limit the court's jurisdiction. The Supreme Court has held that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). Thus, Wright's compliance with the EEOC's process is a procedural

requirement rather than a limit on the court's subject matter jurisdiction, and procedural requirements of this kind may be pleaded generally.

"[A] plaintiff must generally allege in his complaint that 'all conditions precedent to the institution of the lawsuit have been fulfilled.'" *Jackson v. Seaboard Coast Line R. Co.*, 678 F.2d 992, 1010 (11th Cir. 1982) (citing Fed. R. Civ. P. 9(c)). A defendant "may deny 'specifically and with particularity' that the preconditions have not been fulfilled," and the "plaintiff then bears the burden of proving that the conditions precedent, which the defendant has specifically joined in issue, have been satisfied." *Id.* Thus, Rule 9(c) separates pleading from proof. At the pleading stage, a general allegation that the conditions precedent have been satisfied is enough. If the Board specifically denies in its answer that Wright satisfied these conditions, Wright will then bear the burden of proving them with evidence, whether it be at summary judgment or at trial. That burden of proof does not make a properly pleaded complaint deficient now.

Here, the Complaint expressly alleges that Wright "has fulfilled all administrative prerequisites and conditions precedent to the institution of this action." (Doc. 1 at 3). It then alleges that Wright filed her charge "[o]n or about January 21, 2024," that the EEOC "issued and mailed to Plaintiff a Determination and Notice of Rights (including right to sue)" on or about August 21, 2025, and that she filed suit "within ninety (90) days of receipt of" that notification from the EEOC.

(Doc. 1 at 4). Nothing more is required. The Board's assertion that Wright "never received the notice of right to sue" (doc. 19 at 4) is argument, not a pleaded fact, and the court must accept the Complaint's allegations as true at this stage. *See Iqbal*, 556 U.S. at 678. If the Board contends that those allegations are untrue, its remedy is to deny them specifically and with particularity, which would then place the burden on Wright to prove them. *See Jackson*, 678 F.2d at 1010.

Moreover, the EEOC charge and notice are consistent with the Complaint's allegations, and the court may consider them without converting the motion to dismiss into one for summary judgment. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (noting that the Eleventh Circuit has held that the court "may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed." (citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002))). A document "need not be physically attached to a pleading to be incorporated by reference into it." *Id.*

Here, the Complaint alleges the notice and the EEOC charge, both of which are central to whether Wright satisfied the conditions precedent to filing her Complaint, and the Board does not challenge their authenticity. (*See* Doc. 1 at 3–4; Doc. 22 at 1–3). The charge names the "Phenix City Board of Education" and is signed and dated January 21, 2024. (Doc. 21 at 40). The notice, which was issued

on August 21, 2025, states: "This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge." (Doc. 21 at 36). The notice also shows that the Board itself was copied on it. (Doc. 21 at 37).

The Board also does not argue that Wright filed suit too late. Title VII permits a civil action "within ninety days after the giving of such notice." 42 U.S.C. § 2000e-5(f)(1). Wright filed this action on November 19, 2025, which is ninety days after the notice was issued and, necessarily, no more than ninety days after she received it. (Doc. 1; Doc. 21 at 36). Although the Board recites the ninety-day requirement, it does not argue that Wright failed to meet it. (*See* Doc. 19 at 6).

Accordingly, because the Complaint adequately alleges that Wright satisfied the conditions precedent to filing her Complaint, the Board's Motion to Dismiss is due to be denied to the extent that it argues that Wright failed to file an EEOC charge or to receive a notice of right to sue. The Board's separate argument that portions of Wright's claims are time-barred is addressed below.

## II. Timeliness of the Removal Claims

The Board argues that Wright's claims arising from her removal as coach are untimely because she did not file her EEOC charge within 180 days of that decision. (Doc. 19 at 4, 8). The Board asserts that "Wright's supplemental coaching duties were allegedly removed about the end of July 2023," and "the charge is timely only

if the discrete unlawful employment actions of which she complains 'occurred' on or after July 25, 2023." (Doc. 19 at 8). In its reply, the Board asserts that "it is plausible Plaintiff's termination-related claims accrued before July 25, 2023." (Doc. 22 at 2). Wright responds that "it is plausible at this motion-to-dismiss stage that her termination-related claims accrued on or after July 25, 2023," and, alternatively, that equitable tolling applies. (Doc. 21 at 18–20).

Because the filing deadline for the charge operates "like a statute of limitations," *Zipes*, 455 U.S. at 393, the Board's timeliness arguments raise an affirmative defense. The Eleventh Circuit has recognized that "[a] statute of limitations bar is 'an affirmative defense, and . . . plaintiff[s] [are] not required to negate an affirmative defense in [their] complaint.'" *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (quoting *Tregenza v. Great American Communications Co.*, 12 F.3d 717, 718 (7th Cir. 1993)). "[A] Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is 'apparent from the face of the complaint' that the claim is time-barred." *La Grasta*, 358 F.3d at 845. Thus, the Board must show that Wright's claims are untimely from the Complaint itself; Wright is not required to disprove untimeliness in her Complaint.

Section 2000e-5(e)(1) requires a charge to be filed "within one hundred and eighty days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). The ADEA separately requires a charge to be filed "within 180 days

after the alleged unlawful practice occurred." 29 U.S.C. § 626(d)(1)(A). Further, the ADA incorporates Title VII's procedures:

> The powers, remedies, and procedures set forth in sections 2000e-4, 2000e-5, 2000e-6, 2000e-8, and 2000e-9 of this title shall be the powers, remedies, and procedures this subchapter provides to the Commission, to the Attorney General, or to any person alleging discrimination on the basis of disability in violation of any provision of this chapter, or regulations promulgated under section 12116 of this title, concerning employment.

42 U.S.C. § 12117(a). Thus, the 180-day filing period for the charge applies to the challenged Title VII, ADEA, and ADA claims. Because the Complaint alleges that Wright filed her charge on or about January 21, 2024, both parties use July 25, 2023, as the cutoff, which accounts for the 180-day filing period.

For a decision that is communicated to an employee, the clock for filing a charge starts when the decision is made and communicated rather than when its effects are later felt. *See Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980) (explaining that the "alleged discrimination occurred–and the filing limitations periods therefore commenced–at the time the tenure decision was made and communicated to [the employee]"). Here, the Complaint alleges that, "in late July 2023, [the] Board voted to terminate [Wright] as girls' high school basketball head coach" and that the principal "later informed [Wright] that her contract as girls' basketball head coach would not be renewed." (Doc. 1 at 15). The Complaint gives no exact date for either the vote or the notice. In her Complaint, Wright alleges that

she remained on leave "until around August 1, 2023." (Doc. 1 at 15). She alleges that the Board removed her as coach "while she was still on medical leave, but about to return to work within the week." (Doc. 1 at 25). Taking these allegations as true and reading them in Wright's favor, the court can reasonably infer that the Board voted within a week of her return and that Wright learned of the decision after the vote. Read together, these allegations support a reasonable inference that Wright received notice on or after July 25, 2023.

The Board's reply only asserts that an earlier accrual date is also "plausible." (Doc. 22 at 2). However, at this motion-to-dismiss stage, the court draws reasonable inferences in Wright's favor, not the Board's. And the Board bears the burden on this affirmative defense. An earlier date that is merely "plausible" does not make it "apparent from the face of the complaint" that Wright's claims are untimely. *La Grasta*, 358 F.3d at 845. Accordingly, the Board's Motion to Dismiss is due to be denied on this ground, and the court need not address Wright's alternative argument for equitable tolling.

## III. Timeliness of the Title VII Pay Claims

The Board argues that Wright's "Title VII claims based on alleged events and acts relating to the purported terms and conditions of her supplemental position and allegedly occurring between July 1, 2021, and July 25, 2023, are time-barred." (Doc. 19 at 8). Wright responds that her "pay discrimination complaint has a different

accrual 'trigger' – and . . . likely a different accrual date – than her claims arising from the Board's termination or non-renewal of her coaching contract itself." (Doc. 21 at 23).

Section 2000e-5(e)(3)(A) provides:

> For purposes of this section, an unlawful employment practice occurs, with respect to discrimination in compensation in violation of this subchapter, when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

42 U.S.C. § 2000e-5(e)(3)(A). Stated differently, each discriminatory paycheck starts a new filing period. Here, Wright alleges that she "experienced the disparity in the amount of her coaching supplement through July 2023." (Doc. 1 at 16). Read in Wright's favor, that allegation supports a reasonable inference that she received a supplement payment that reflected the disparity during July 2023. The Complaint does not say when in July the Board made that payment, and nothing in it shows that her last unequal payment came before July 25, 2023. Thus, it is not "apparent from the face of the complaint" that every discriminatory payment fell outside the period for filing a charge. *La Grasta*, 358 F.3d at 845. Accordingly, the Board's Motion to Dismiss is due to be denied as to Wright's Title VII pay claims.

## IV. Timeliness of Other Conduct Before July 25, 2023

The Board further argues that "Wright has alleged several discrete acts that are time-barred," but does not identify those acts. (Doc. 19 at 9). Wright responds that the Board's argument fails to distinguish discrete acts, compensation allegations, and background evidence. (Doc. 21 at 26–32). Wright further asserts that "the Board's failure to identify *specific* acts or events it contends are time-barred . . . leaves the [c]ourt no choice but to reject entirely [D]efendant's argument . . . ." (Doc. 21 at 32).

"[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). However, the statute does not "bar an employee from using the prior acts as background evidence in support of a timely claim." *Id.* Discrete acts are individual employment decisions "such as termination, failure to promote, denial of transfer, or refusal to hire." *Id.* at 114. Further, "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Id.*

Here, the Board has not identified any specific act that it contends would warrant dismissal. Rather, the Board groups all allegations within a broad period and asks the court to dismiss claims based on that grouping. (Doc. 19 at 8–9). Without knowing which acts the Board challenges, the court cannot determine which

allegations supply an independent claim, which concern compensation governed by § 2000e-5(e)(3)(A), and which serve only as background for another claim. Accordingly, the Board's Motion to Dismiss is due to be denied on this ground.

**V. Scope of the EEOC Charge**

The Board argues that Wright's Title VII claims should be dismissed "to the extent she seeks relief based on facts which were not asserted in her EEOC charge and not timely asserted." (Doc. 19 at 6). Wright responds that this argument "runs afoul of the *Sanchez* standard and must be rejected." (Doc. 21 at 31) (citing *Sanchez v. Standard Brands*, 431 F.2d 455 (5th Cir. 1970)). Wright points out that a Title VII complaint "may encompass any kind of discrimination like or related to allegations contained in the [EEOC] charge and growing out of such allegations during the pendency of the case before the Commission." (Doc. 21 at 30) (quoting *Sanchez*, 431 F.2d at 466). She also asserts that "the only relief Ms. Wright seeks is for injuries flowing out of the termination or non-renewal of her coaching position (and its related salary supplement), and out of the gender-based disparity she suffered in that supplement before her termination." (Doc. 21 at 31).

The Eleventh Circuit has held that "a 'plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" *Gregory v. Georgia Dep't of Hum. Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004) (quoting *Alexander v. Fulton County, Ga.*, 207

F.3d 1303, 1332 (11th Cir. 2000)). "Courts are nonetheless 'extremely reluctant to allow procedural technicalities to bar claims brought under [Title VII],'" and "the scope of an EEOC complaint should not be strictly interpreted." *Gregory*, 355 F.3d at 1280 (quoting *Sanchez*, 431 F.2d at 460–61, 465).

Here, Wright's charge checks the boxes for sex, retaliation, age, and disability, and lists "Equal Pay" as an additional basis. (Doc. 21 at 40). It describes her 2021 grievance over "the difference in pay of basketball supplements based on sex." (Doc. 21 at 40). It states that "[t]he school board replaced me with a younger person, with less experience," and that "[i]n August 2023, the school board reduced my pay substantially, until my resignation in October 2023." (Doc. 21 at 40). It further states that "[t]he Phenix City Board of Education has retaliated against me because of my previous complaint of discriminatory pay for the basketball coaching positions based upon sex." (Doc. 21 at 40). These allegations cover both Wright's removal as coach and the pay disparity, which are the injuries for which she seeks relief. (Doc. 21 at 31).

In its Motion to Dismiss and its Reply to Wright's Response, the Board identifies no particular fact or claim that exceeds the investigation reasonably expected to grow out of the allegations contained in the charge. (Doc. 19 at 6; Doc. 22 at 2–3). Accordingly, the Board's Motion to Dismiss is due to be denied on this ground.

## VI. The Equal Pay Act and Rehabilitation Act Claims

The Board asks the court to dismiss "all claims asserted against it." (Doc. 19 at 11). However, the Board's arguments concern only the EEOC charge and injunctive relief. (Doc. 19 at 4–10). As Wright points out in her response, the Board "did *not* mention Plaintiff's claims arising under the Equal Pay Act and the Rehabilitation Act in its argument." (Doc. 21 at 1–2). The Equal Pay Act claims are Counts Two and Four, and the Rehabilitation Act claim is Count Seven. (*See* Doc. 1 at 17–19, 20–22, 26–27). Moreover, the Board's assertion that Wright "has failed to allege facts sufficient to state a claim for violation of any federal or state law" does not identify any defects in Counts Two, Four, or Seven. (Doc. 19 at 3). Accordingly, because the Board has failed to develop a ground for dismissing Counts Two, Four, or Seven, the Board's Motion to Dismiss is due to be denied as to these counts.

## VII. Standing to Seek Injunctive Relief

The Board argues that Wright lacks standing to seek an injunction because, "[a]s alleged, Plaintiff is no longer an employee of [the] Phenix City Board of Education." (Doc. 19 at 10). Wright responds that the "Board has not identified, and Ms. Wright does not presently seek, any future-facing, non-monetary relief that would qualify as injunctive." (Doc. 21 at 34). In its reply, the Board agrees that its "request that Plaintiff's claim for injunctive relief be dismissed is moot." (Doc. 22

at 3). Accordingly, the court accepts Wright's representation that she is not seeking injunctive relief and, as such, the Board's Motion to Dismiss is due to be denied as moot to the extent that it seeks dismissal of a claim for injunctive relief.

## CONCLUSION

Accordingly, for the reasons stated above, it is hereby **ORDERED** as follows:

1. The Board's Motion to Dismiss (doc. 19) is **DENIED**.
2. To the extent that the Board's Motion to Dismiss seeks dismissal of a request for injunctive relief, it is **DENIED as MOOT** in light of Wright's assertion that she seeks no injunctive relief.
3. The Board shall answer the Complaint (doc. 1) **on or before November 24, 2026**, pursuant to Federal Rule of Civil Procedure 12(a)(4)(A).

**DONE** and **ORDERED** on this the 10th day of November, 2026.

**BILL LEWIS**
UNITED STATES DISTRICT JUDGE